Pauline NOEL et al., Plaintiffs in Error,

v.

Harold R. LOCKER et al., Defendants in Error.

No. 40076.

Supreme Court of Oklahoma.

May 21, 1963.

Rehearing Denied June 18, 1963.

Rainey & Barksdale, Okmulgee, for plaintiffs in error.

Hays & Beidleman, Okmulgee, for defendant in error Harold R. Locker.

JOHNSON, Justice.

In August, 1958, one Leland M. Jewett was the owner of certain oil and gas leases

in Okmulgee County, Oklahoma, subject to an overriding royalty of ⅛th of the ⅞ths working interest. On the 1st day of August, 1958, Jewett tendered to Pauline Noel, one of the plaintiffs in error, a written contract whereby he assigned a one-fourth "net profits" interest in said leases, subject to the provisions of such contract. This contract was accepted by Pauline Noel on the 26th day of January, 1960, and was recorded in the office of the County Clerk of Okmulgee County on the same day.

Subsequent to the execution of said contract, Pauline Noel assigned interests therein to the other two plaintiffs in error, Winings and Weston.

On February 20, 1962, the defendant in error, Locker, acquired said leases from Jewett and immediately mortgaged same to the Central National Bank of Okmulgee for $8,000.00, which was the amount paid for the leases.

The record reflects that Locker purchased the leases with the expectation of salvaging the equipment and plugging the wells. When this became known, the plaintiffs in error, hereafter referred to as plaintiffs, brought his action against the defendant Locker seeking an injunction and accounting.

After joining of the issues, hearing was had upon the application for a temporary injunction. The trial court granted the temporary injunction as to two of the wells involved, designated as Nos. 1 and 2, but denied it as to well No. 3. From this denial of the temporary injunction on well No. 3, plaintiffs appeal. There has been no cross-appeal in regard to the stopping of the salvaging of the equipment in wells Nos. 1 and 2.

It is the contention of plaintiffs that (1) the order appealed from is inconsistent with the remainder of the judgment and (2) that the judgment is contrary to law. We deem it necessary to consider only number two.

The determination of the propriety of denying the injunction as to well No. 3 necessitates a consideration of the provisions of the contract of plaintiffs and the evidence produced at the hearing.

While it is not a controlling factor, the evidence shows that well No. 3 was on a separate lease.

The provisions of the contract which are pertinent to the present controversy are:

1. The contract conveys an undivided ¼th "net profits" interest in the leasehold estates, the term "net profits" being defined in the contract as follows:

"III

"It is agreed that in determining whether or not a net profit has been realized by First Party from the leasehold interest upon the above described four tracts, all expenses incurred by First Party in the acquisition, development and operation of the leasehold interest upon the above described four tracts shall be taken into consideration, including, by way of illustration but not by way of limitation, expenses incurred in connection with the purchase by First Party of the leasehold interest upon the said four tracts above described, expenses incurred in connection with the drilling of wells whether productive or dry, the completing, equipping, plugging and abandoning of wells, the producing of wells and treatment, storage and marketing of the production therefrom, the making of improvements upon the leasehold premises in connection with the operation thereof, expenses incurred in connection with the examining, perfecting of and defense of title to said interest, including attorney's fees incurred in connection therewith, losses, damages or liabilities sustained or incurred in connection with the operation of said interest, gross production and ad valorem taxes, premiums paid for workmen's compensation insurance, public liability, fire, wind, tornado or other insurance, and any other expenses and charges that are reasonable and customary in connection with the operation

and development of said property and which are properly chargeable against the leasehold premises."

2. Provides for recognition of the assignor's overriding royalty.

3. Paragraph VII of this contract reads:

"First Party shall have exclusive charge, control and supervision of all operations of every kind to be conducted on said land for the development, production, treating, handling and marketing of oil, gas and other minerals therefrom as well as the payment of rentals, taxes and other charges which may arise or become due."

Paragraphs VIII and IX provide for accounting and for the assignability of portions of the contract.

The evidence discloses that well No. 3 would not produce over a barrel of oil a day in its present condition.

During the course of the hearing statements of expenses were furnished to opposing counsel by the attorneys for the defendant.

We are, of the opinion and hold that the evidence justified the holding of the trial court that well No. 3 could no longer be operated without loss. The contract of plaintiffs specifically provided for defendant to have "exclusive charge, control and supervision of all operations of every kind to be conducted on said land for the development, production, treating, handling and marketing of oil," etc. We deem this provision controlling in the absence of evidence of mismanagement or bad faith.

In Bradham v. Johnson, 195 Okl. 275, 156 P.2d 806, we said:

"The dissolution of a temporary injunction is largely a matter of judicial discretion, to be determined by the facts of each particular case; and, except in cases of palpable abuse of such discretion or a clear showing of error on the part of the trial court, the reviewing court will not interfere with or in any manner control this discretion."

We think by analogy the same rule applies to the refusal to grant a temporary injunction.

Again, in Pabst Brewing Co. v. Johnston, 64 Okl. 13, 166 P. 123, the court said:

"The granting or refusing of a temporary injunction is a matter largely within the sound discretion of the trial court. * * *"

There is no evidence of abuse of discretion.

The judgment of the trial court is affirmed.,

HALLEY, V. C. J., and DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.